# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **AMANDA YEAGER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-3246 |
| | ) | |
| **SHANE OWSLEY,** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is Defendant Shane Owsley's Motion for Summary Judgment [Doc. 13]. Plaintiff Amanda Yeager, who is proceeding *pro se*, did not file a response to the motion.

In her Complaint under 42 U.S.C. § 1983, Ms. Yeager alleges Mr. Owsley violated her First and Fourteenth Amendment rights by operating a social media account for official purposes and excluding individuals, including Ms. Yeager, from an otherwise open dialogue because those individuals expressed views with which the public official disagrees. See Doc. 1, at 2. Mr. Owsley moves for summary

1

judgment on the basis that his conduct was not under color of law and, further, he is entitled to qualified immunity.

FACTUAL BACKGROUND[1]

Defendant Shane Owsley is employed as the Superintendent for Gillespie Community Unit School District 7 ("District 7"). See Doc. 13, at 1. District 7 is operated and controlled by the Board of Education of Gillespie Community Unit School District 7 ("Board of Education"), which consists of seven publicly elected members and which operates and controls the public schools within the jurisdictional boundaries of District 7 for students in Pre-K through 12th grade. Id. at 1-2. Mr. Owsley was hired by the Board of Education as the Superintendent of District 7 effective July 1, 2020. Id. at 2. As the Superintendent, Mr. Owsley was directed in his work by the Board of Education through its direction and through its duly adopted policies. Id.

After being hired as Superintendent, Mr. Owsley created a personal account on the social media platform Twitter under the

---

[1] The Defendant's Undisputed Material Facts are properly supported by citations to the record. Because the Plaintiff did not respond to the Defendant's factual allegations, the Court considers the facts to be undisputed for purposes of the motion. See Fed. R. Civ. P. 56(e)(2); see also CDIL-LR 7.1(D)(2)(b)(6).

2

screen name "@CUSD7_Sup" ("the Twitter Account"). Id. Neither the Board of Education nor the District own or control the social media platform Twitter. Id. The Twitter Account was used to discuss educational policy, events, and information about District 7, in addition to information about remote learning generally for schools. Id. Mr. Owsley created the Twitter Account on his personal time. Id. The Twitter Account was not part of Mr. Owsley's official responsibilities as an employee of District 7 either under Board Policy or his contractual agreement with the Board of Education. Id. Mr. Owsley was not directed or asked by the Board of Education to create the Twitter Account. Id. The Board of Education did not authorize Mr. Owsley's creation of the Twitter Account and it was not an official account of the District or the Board of Education. Id. The Board of Education was not aware that the Twitter Account existed, and the Board did not control the content or operation of the account. Id.

The Board of Education has approved a page on the social media platform Facebook which is located at https://www.facebook.com/cusd7 ("District Facebook Account"), in order to provide constituents with information about the District. Id. at 3. Under Board Policy 5:25, individual employees are permitted to

create and utilize social media accounts but the Board of Education expressly acknowledges that it does not monitor or control these accounts. Id. Under Board Policy 2:110, the President of the Board of Education serves as the official spokesperson of the Board of Education. Id.

At the beginning of the 2020-2021 school year, the Board of Education decided to provide educational services to students in a remote setting. Id. Some community members, including Plaintiff Amanda Yeager, disagreed with this decision and wanted students to receive educational services in person. Id. Ms. Yeager went to Board of Education meetings and expressed her opinion that education should be provided in person. Id. The Plaintiff also posted her opinion about in-person learning in online forums such as the Twitter Account. Id. Mr. Owsley did not censor or remove comments by Ms. Yeager from the Twitter Account which were in favor of providing in-person education. Id.

On or about September 21, 2020, Ms. Yeager posted a public message on the Twitter Account which discussed the minor children of Mr. Owsley and discussed where the children went to school. Id. Mr. Owsley never used the Twitter Account and did not want

4

information about his children or their educational placement discussed publicly on the Internet. Id. at 4. Because of the discussion regarding his minor children and the disclosure of their educational placement, Mr. Owsley temporarily blocked Ms. Yeager from viewing or interacting with the Twitter Account. Id. Ms. Yeager then posted another message about Mr. Owsley's minor children and discussed where they went to school on the Twitter Account. Id.

Due to the discussion regarding his minor children and the disclosure of the school they attended, Mr. Owsley disabled and deleted the Twitter Account and another personal Twitter account he maintained. Id. Mr. Owsley did not seek the consent or authorization of the Board of Education in order to disable and delete the Twitter Account. Id. Because it was a personal account, Mr. Owsley did not need the consent or authorization of the Board of Education to disable and/or delete the Twitter Account. Id. Mr. Owsley has not reactivated the Twitter Account or any other account on the social media platform Twitter and has no intention of doing so.

DISCUSSION

Mr. Owsley moves for summary judgment on the basis that Ms. Yeager cannot establish that Mr. Owsley acted under color of law and, alternatively, he is entitled to qualified immunity. Doc. 13, at 1. As the Court noted, Ms. Yeager did not file a response to Mr. Owsley's motion. The docket report shows that a Rule 56 Notice was sent to Ms. Yeager advising her that she had 21 days to respond to the motion. Doc. 14, at 1. The Rule 56 Notice further provides that the motion, if appropriate, would be granted and the case terminated if she failed to respond. Id.

Summary judgment standard

Summary judgment is appropriate if the motion is properly supported, and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The Court views the evidence and construes all reasonable inferences in favor of the non-movant. See Driveline Systems, LLC v. Arctic Cat, Inc., 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."

See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." Driveline Systems, 36 F.3d at 579 (internal quotation marks omitted). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).

Section 1983 standards

"Section 1 of the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, 'authorizes suits to enforce individual rights under federal statutes as well as the Constitution' against state and local government officials." Levin v. Madigan, 692 F.3d 607, 611 (7th Cir. 2012) (quoting City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 119 (2005)). Section 1983 does not create substantive rights, but serves to vindicate federal rights that are conferred elsewhere. See Padula v. Leimbach, 656 F.3d 595, 600 (7th Cir. 2011). In order to state a claim under § 1983, a plaintiff must show that (1) she was deprived of a federal right; (2) by an individual acting under color of

7

state law.  See Ovadal v. City of Madison, 416 F.3d 531, 535 (7th Cir. 2005).

Defendant's actions and Color of Law Requirement

"Not every action by a state official or employee occurs under color of state law."  Barnes v. City of Centralia, 943 F.3d 826, 831 (7th Cir. 2019).  State action involves the exercise of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Walker v. Taylorville Correctional Center, 129 F.3d 410, 413 (7th Cir. 1997) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)).  The action must be "related in some way to the performance of the duties of the state office."  Honaker v. Smith, 256 F.3d 477, 485 (7th Cir. 2001).  Any acts of officers involving their personal pursuits are plainly excluded.  See Screws v. United States, 325 U.S. 91, 111 (1945).

"Section 1983 does not cover disputes between private citizens, even if one happens to be an officer."  Barnes, 943 F.3d at 831.  A plaintiff must do more than assert that the individual is a state officer in order to establish action under color of state law.  See Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990).  The critical

8

inquiry involves whether the individual's actions related in some way to the performance of his or her official duties. See id.

In Luce v. Town of Campbell, Wisc., 872 F.3d 512 (7th Cir. 2017), the Seventh Circuit determined that when a local police chief defamed local citizens for expressing political views, that conduct was not under color of law because defamation was not one of the police chief's duties. See id. at 514-15. Similarly, the Seventh Circuit affirmed the district court's conclusion that a mayor and fire chief's act of burning down the home of a disgruntled resident did not constitute state action because that act was not related to any official duty or activity of the mayor and fire chief. See Honaker, 256 F.3d at 485. "Arson is not among a fire chief's duties, just as defamation is not among a police chief's." Luce, 872 F.3d at 515.

Here, Twitter is a social media platform that is owned and operated by a private entity. The operation of the Twitter Account did not derive from state law. Mr. Owsley's creation and operation of the Twitter Account did not result from any state action.

Mr. Owsley further claims that the Illinois School Code does not grant him the authority to create a social media account on behalf of

9

the District. As an employee, Mr. Owsley works under the direction of the Board of Education and is subject to its policies. 105 ILCS 5/10-16.7; 105 ILCS 5/10-21.4. Mr. Owsley's powers under state law do not involve creating social media accounts or communicating with the public in general.

Additionally, the policies of the Board of Education do not support the notion that Mr. Owsley was independently vested with the authority by virtue of his position to create and operate the Twitter Account. In fact, the Board of Education's policy on social media accounts specifies that that social media accounts maintained by an employee are not those of the Board of Education. Board Policy 5:125 provides, (1) "The Board expressly disclaims any responsibility for imposing content filters, blocking lists, or monitoring of its employees' personal technology and social media;" and (2) an employee may "use personal technology and social media for personal purposes only during non-work times or hours." Doc. 13-1.

It is undisputed that Mr. Owsley created the Twitter Account on his own time and operated it based on his own personal discretion. The Board of Education did not direct Mr. Owsley's work in this

regard and was not aware that the Twitter Account existed. The fact that Mr. Owsley was a public employee does not transform his creation of the Twitter Account on a platform not owned, controlled, or operated by the Board of Education into official state action due to the nature of his employment. The undisputed material facts establish that that the creation and operation of the social media account was a purely personal endeavor of Mr. Owsley. Mr. Owsley's actions were entirely outside the control of the Board of Education and not part of the duties and responsibilities of the Superintendent under State law or his employment with the Board. Accordingly, Mr. Owsley did not need to obtain the permission or consent of the Board of Education to delete his Twitter Account.

There is no dispute that a private citizen such as Mr. Owsley has the ability to decide who will or will not have access to his social media accounts without running afoul of the First Amendment. As previously noted, a First Amendment violation requires governmental action.

Because it is undisputed that Mr. Owsley was not acting under color of law when he blocked Ms. Yeager from accessing the Twitter

Account, Ms. Yeager's claims under 42 U.S.C. § 1983 fail as a matter of law. Mr. Owsley is entitled to summary judgment.

Qualified Immunity

Even if Mr. Owsley acted under color of law as a governmental official and violated Ms. Yeager's First Amendment rights, the Court concludes he would be entitled to qualified immunity. "The doctrine of qualified immunity balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices on the other." Lopez v. Sheriff of Cook County, 993 F.3d 981, 987 (7th Cir. 2021) (internal quotation marks omitted). In determining whether an officer is entitled to qualified immunity, courts consider whether the officer's "conduct violated a constitutional right and, if so, whether that right was clearly established at the time of the alleged violation." Id.

Courts should look at past cases with specificity in determining whether an officer violated clearly established law. See id. at 988. "The Supreme Court has time and again instructed lower courts not

to define clearly established law at a high level of generality." Id. (internal quotation marks omitted). While a case with identical factual circumstances is not required, the right must be "so clearly established that it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id.

The case law concerning whether or not the blocking of individuals from a social media platform controlled by a governmental official was not clearly established at the time Mr. Owsley blocked Ms. Yeager. The Seventh Circuit had not considered the issue. Other circuit courts of appeal are split on the issue. See Davison v. Randall, 912 F.3d 666, 675 (4th Cir. 2019) (finding a First Amendment violation by elected President of County Board of Supervisors for blocking plaintiff from a social media page); Campbell v. Reisch, 986 F.3d 822, 826 (8th Cir. 2021) (finding that legislator was not acting under color of law in blocking an individual from social media page).

It is undisputed that Mr. Owsley blocked Ms. Yeager from the Twitter Account and later disabled and deleted the Twitter Account because Ms. Yeager posted a message about Mr. Owsley's minor

13

children and where they attended school. Doc. 13, at 4. Moreover, Mr. Owsley did not censor or remove comments of Ms. Yeager that were in favor in-person education before she posted the information about his minor children. Id. at 3. There is no clearly established case law which provides that Mr. Owsley's actions under those circumstances constitute a First Amendment violation. Therefore, the Court concludes that, even if Mr. Owsley were acting under color of law and violated Ms. Yeager's First Amendment rights, he would be entitled to qualified immunity. Summary judgment is also appropriate on that basis.

Therefore, Defendant Shane Owsley's Motion for Summary Judgment [d/e 13] is GRANTED.

The Clerk will enter Judgment in favor of the Defendant and terminate this case.

ENTER: June 10, 2022

/s/ *Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE